Thank you, Your Honor. Good morning. Good morning. Daniel Cohen on behalf of the Owner-Operators. I'd like to reserve five minutes. The Owner-Operators are under lease to Swift for the delivery of freight throughout the country. Their leases are governed by the Federal Truth in Leasing Regulations. This case presents an issue of first impression in this circuit regarding the chargeback regulation. A chargeback is an item which is paid for by Swift and then settlement or paycheck of the Owner-Operator. The first issue is whether the District Court erred in the interpretation and application of the chargeback regulation. The second issue is whether the District Court erred in denying the Owner-Operators' request for equitable remedies of restitution and disgorgement under 14704A1, which broadly allows for injunctive relief. 37612H has three requirements. First, that the lease specify the chargebacks. Second, the lease must explain how the chargeback is to be computed. Third, 37612H requires that the carrier afford the Owner-Operator's documents necessary to determine the validity of the charge. The District Court erred in finding that Swift's leases complied with the regulations. When we first brought the suit, Swift had a lease which specified chargebacks but said nothing about how they were to be computed. And it did nothing more than give the Owner-Operators a bill every week summarizing or tallying up the amount of the chargebacks. After we filed the suit, Swift changed its lease by putting in a footnote on the roster of chargeback charges which said these charges will include an administrative cost, an unspecified administrative cost. The District Court found that the original lease violated 37612H because it did not specify the fact that there was a markup. But that didn't go far enough. The District Court exonerated Swift's failure to explain how the chargebacks were to be computed. So just so I understand, you're – you now are saying that a flat-feet chargeback with notice that it includes a markup is not enough and you have to have something more? That's correct, Your Honor. Because as I understand it, there are a few variable chargebacks, but most of the chargebacks now are – they give you a flat fee. They tell you I'm going to charge you X and the driver knows I'm going to be – have to pay X. There are two what has been dubbed as a flat-rate chargeback. Those chargebacks are for insurance and Qualcomm. There still remains a variable rate chargeback for fuel. You don't find out what the fuel charge is until you get to a pump at any given day. So there is still a variable rate chargeback. But it tells you exactly how it's going to be charged by X percent of the $100 value in the pump, et cetera. So it tells you the formula. You just have – it has a variable based on fuel price, correct? The lease specifies that you'll be charged the amount that you see at the pump whenever you get to the pump. And according to the distinctions drawn in the recent Landstar decision, that falls into the category of a variable rate chargeback. And those chargebacks have – you have to disclose the third-party costs regardless of whether the lease says this chargeback when you get to the pump may have a markup. They still have to show the third-party costs for fuel. That same case, the same Landstar case, said that flat fee chargebacks, the extent of flat – do not require disclosure beyond the actual amount your clients will have to pay. It says that, and that's erroneous. It's contrary to the Court's decision in the initial Landstar decision, and we can demonstrate why that's an erroneous distinction. The – turning to the regulatory history, we submit that you need to go no further than the face of the regulation to see that a carrier must demonstrate or show how the chargeback is to be calculated. And it's supposed to – or required to provide documents necessary to determine the validity of the chargeback. The regulatory history confirms that there are no exemptions, there are no distinctions between flat rate chargebacks and variable rate chargebacks. In 1981, the ICC issued a notice of proposed rulemaking where it expressed its indignation about the fact that carriers were adding on undisclosed markups to chargebacks and making profit. They called this an illegitimate markup. In effect, carriers were running their chargeback programs like company stores, and this was not the intention or the purpose of the chargebacks as contemplated by the ICC. They proposed a rule which would have placed a 10 percent cap on chargebacks, but ultimately chose a different option. They chose the option of requiring carriers to specify how the chargeback was to be computed and required them to provide all documents supporting any chargeback. In the final rule in 1982, there is no question left that the ICC incorporated its concerns and its intentions as set forth in the NPRM in the final rule. In discussing the reason why they didn't change the insurance rule, they stated, we see no – we see no requirement that the carriers summarize the insurance coverage provided to the owner-operator. We agree, especially in view of our alteration of the proposed changes to Section 1057.1i so as to require that owner-operators have access to all documents supporting any chargeback. This will include insurance chargebacks and should deter any excessive markup of insurance as discussed in our notice of proposed rulemaking. We submit that this confirms the ICC's intention in setting forth the language as it did in the final rule. Landstar ignores this language. It cites half of this quotation, and it stops without reciting the critical language at the end. And for that reason, we submit that Landstar should not be followed here. I'd like to turn briefly to the district court's error in its interpretation of the injunctive relief period. The district court ruled that Congress would have had to have expressly allowed the equitable remedies of restitution and disgorgement for those to be available to the owner-operators here. This is contrary to longstanding Supreme Court precedent, contrary to the precedent of this circuit, and contrary to the law of this case. In this court's first opinion in Swift, the court concluded, Congress has not clearly indicated an intent to restrict the court's equitable discretion in enforcing these regulations. That's a universal proposition. There was no restriction then, there's no restriction today. And I'd like to reserve the remainder of my time. Let me ask a question, however, please. If we find that Swift's current lease is in compliance with the truth in leasing regulations, wouldn't injunctive relief be unnecessary? Yeah, if the lease were in current compliance, fully in compliance, would the remedies of restitution and disgorgement not be appropriate, perhaps? But the district court found that they did violate the regulations on the first lease. The district court said the chargebacks were lawful anyway, so I'm not going to order a disgorgement so. On the question of disgorgement restitution, yes, that would remain viable today, even if you found the current lease compliant. Thank you. Thank you. Why? Maybe I'm sorry. If the current lease, if it were deemed to be legal, what is what's not moot then with respect to disgorgement? The district court found that the original lease violated the regulations. Right. So we would seek restitution and disgorgement or any other equitable relief other than prospective injunctive relief for that violation? For the prior. Yes, Your Honor. Thank you. May it please the Court. Bill Quirk on behalf of Swift Transportation. In listening to the argument today and in rereading the appellant's brief, I'm left with the firm impression that they are arguing for a regulation that they wish the ICC had adopted and they're arguing for the Landstar case as it originally existed before it was overturned on rehearing. The ICC specifically considered the regulation that they are arguing today and rejected it back in 1981, 1982 when it adopted it. The first version of the regulation, this is 376H, it had a different number originally, but it's the same regulation, the truth in leasing regulation, required the lease, the operating agreement to include an amount, required the lease to clearly specify the charge back items and an amount, the amount of each item including administrative costs. The agency then went back and changed that to just require the lease to clearly specify all items. Then the carrier said, it's going to be difficult to us to put in the exact amount in these operating agreements because some of these costs vary. Gasoline, for example. And so the ICC went back and said, okay, this is what we'll require. The lease shall clearly specify charge back items together with a recitation as to how the amount is to be computed, and then you have to give the owner-operators documents which are necessary to determine the validity of the charge. So today OIDA is arguing that somehow this regulation requires carriers to provide all the documentation behind these charges, when the intent was exactly the opposite. The ICC said, if you just specify in the lease what the amount is going to be, that's all that's necessary, and then show the drivers that you charge them that amount. If it's a variable amount, if it's gasoline, for example, you tell them how that's going to be computed, because you can't tell them the exact amount. You could just say $2.50 a gallon, that would comply with the regulation. Here SWIFT said, we're going to charge you the posted pump price times the number of gallons you buy. Now OIDA says that's not enough, and then on the settlement sheets the drivers are shown that they were charged that amount. OIDA says that's not enough, what this regulation somehow requires is for you to show how much you paid for gasoline, how much you went out, how much you bought from a refiner or a distributor, all the costs that you put in. Well, we submit that's absolutely useless information. All the owner-operator needs to know is what the price is going to be so he or she can make a lease of determination as to whether they should buy from SWIFT or from other suppliers. None of these items have to be purchased from SWIFT. It's all optional. The whole point of this lease is to say, this is what you're going to get charged if you buy it from us. If you don't want to buy it from us, that's fine. These are the amounts. Let me ask a question. Why would the fact that markups are lawful necessarily indicate that the regulation wasn't intended to require carriers to fully disclose them? Well, Your Honor, it's just really giving the owner-operators useless information, frankly, and it's very burdensome to the carriers to supply it. If you're going to a store to buy an item, you don't ask what the markup is, what the variable cost is, what the administrative cost is. You just want to know how much the item costs. And that's the same situation the owner-operators have here. All right. I assume that you then agree with Landstar in the Eleventh Circuit case and that carriers would be required to disclose markups for variable rates as opposed to flat fee. If not, would you formulate the disclosure requirements for variable versus flat fee chargebacks? Are there any circumstances under which SWIFT would be required to fully disclose its actual costs or profits? I think there would be some situations like that. Just none of them are applicable here, Your Honor. I think if SWIFT says we're going to charge you $26 a month for Qualcomm services as an example, SWIFT doesn't have to disclose how much the Qualcomm services cost it. I think that's clear from the Landstar decision. I think when we say we're going to charge the posted pump price times the number of gallons purchased, I don't think that requires any additional disclosure either. If you had a situation where you said to the owner-operators, we're going to charge you our cost and, you know, we're getting a discount. We're going to pass it on to you. We'll charge you our cost plus a markup. Then I think you're going to have to show, provide documents that show how much you actually paid, any applicable discounts you got, SWIFT got, and then share with the owner-operators how much markup you had. But none of that is what went on here. We told them how much we were going to charge them or the method by which we were going to charge them. It wasn't a cost plus kind of thing. So I don't think there's any situation in our lease that requires that kind of documentation or explanation. Briefly on the, I just want to point out that an alternative ground supporting everything the district court did is the fact that they didn't have a coherent damages theory here. Really what they're arguing for is that they're saying there was some sort of a problem in your disclosure and so therefore we want complete restitution or complete disgorgement of every item you charge. In other words, Qualcomm, $26 a month, they got the satellite service, but if there was some problem with the disclosure, we want $26 back. There's no effort to show damages sustained. And that's what the statute requires. The statute gave private remedies to owner-operators. It took it away from the ICC when the ICC was disbanded. And it said you can get injunctive relief or you can get damages. And damages sustained as a result of a violation. Below, the plaintiffs never explained what their damages theory was. They just said basically we want the full amount back or we want the   Now, I'm not sure that's the case. Well, it might be true that damages and restitution would have an overlap, but what about the argument that an injunction could include disgorgement, which it would be different than damages and that that should be within the ambit of an injunction? I think the only way you can read what Congress did here is to say we're going to give you injunctive relief and damages. I mean, these are the two things you're getting in this statute. If you had just a general statute saying, you know, injunctive relief, restraining orders, other orders, something like that, without this specificity, then I think the intent on Congress's part to say you get injunctive relief, that's a limitation on the traditional equitable powers of the court. It's just injunctive relief. It's not restitution or disgorgement. Restitution or disgorgement might be appropriate if the ICC were still enforcing these regulations. The ICC could force the motor carrier to give back the amount of the overcharge, perhaps, but there's no place for it here when you have the damages sustained argument. Really, the disgorgement and restitution is just an end run around the requirement in the statute that you have to show damages sustained. Would unreasonable charges be subject to recovery as damages, unreasonable charges that hadn't been disclosed? Well, Your Honor, again, I don't think there's any prohibition in here against unreasonable charges. The purpose of this regulation is to require full disclosure of what the charges are going to be so that the owner-operators can make a decision. So what would be damages? What would be what would If an owner-operator could show, perhaps, that there wasn't a full disclosure of what the cost was going to be, and they could have found a comparable product for less, or if somehow the amount changed from what it was said to have been in the difference. But there's no support in this statutory scheme for a full restitution of the entire amount of the charge. I mean, that's totally contrary to the damages sustained part of the statute. So is that how you ATT Broadband, of course, basically said temporary, you have the authority to give temporary and permanent injunctions, which is just slightly broader than this. And I think one of the arguments is that that case would lead us to suggest that there's something broader than just pure injunctive relief. What is your response on whether we'd have to go against ATT Broadband to come out your way? I think AT&T Broadband is, again, the language is different. And I don't think it's set forth in the same context we have here, which is the context where Congress is disbanding the ICC, which had this full, you know, the government agency that had this full array of injunctive relief, disgorgement, and instead they're giving a private right of action to owner-operators telling them that they can recover damages sustained as a result of the violation of the regulations or injunctive relief. I think the only sensible way to read that is to say it's a limitation on the court's ordinary equitable powers. I mean, it doesn't make any sense to allow a court to allow the owner-operators to get disgorgement or restitution when their claim for damages has to be damages sustained as a result of. I mean, it's really akin to asking for a statutory penalty or a fine, which doesn't exist under this private right of action. As Judge Nelson indicated, the claim for injunctive relief is moot at this point. There's no reasonable expectation that the conduct is going to be repeated. That's the test under Martinez v. Wilson, this Court's decision. Oh, by the way, Judge McKeown, on your point about injunctive relief, I think your opinion that you wrote for the Court in Fulfillment Services addresses this claim under this statute, and I think you made this exact point that it's damages sustained. Admittedly, it was talking about a violation of a different part, but it was the same statute, 14704A2. One other point I'd like to make, it's particularly offensive is probably too strong a word, but what OIDA, OIDA here is a competitor of SWIFT. OIDA provides these same services to the owner-operators, but they're not a motor carrier, so they don't have to disclose any of this. What this lawsuit's really about is trying to force SWIFT into making unreasonable, burdensome disclosures to the point where they'll probably have to give up offering some of these services, thereby leaving OIDA free to offer these same services to the owner-operators. One more point, unless the Court has questions. In the event this Court remands for some reason, we would like the Court to consider our statute of limitations argument. We think the only fair way to read this is to say it's a two-year statute of limitations, and that's fully set out in our brief. That only comes up, though, if there's a remand. Unless the Court has any other questions. I think not. Thank you. Last things first. OIDA does not bring these suits to put out competitors or make money. OIDA brings suits under all of the Federal regulations for one purpose, only to protect the regulatory and statutory interests of owner-operators throughout the country. There was an erroneous rendition of my answer to Judge Nelson's question. The question was, if the lease is found to comply with the regulation, is injunctive relief moot? The question of whether there were injuries under the first lease was what I was discussing. If the current lease is found to violate the regulation's perspective, injunctive relief is appropriate and should be entered. And that's what Landstar 1 found. The Association has demonstrated associational standing. That's not been challenged. So it's not moot. We submit this lease is in  not comply with this regulation until it is told to by a Federal court. And the only way to carry out the objective of this regulation is to enter prospective injunctive relief. I find offensive the allegation that all of this is a useless exercise. This is a court of law. It's not a court of, well, what do you think? Do you think this is valuable? Do you think it's not? We have to look at the intention of the ICC when this deregulation occurred 30 years ago. They had the last word on what their intentions were. And that is not changed. We can't change it because someone finds it useless or bothersome. In 1981, the ICC stated, carriers are defeating the intent of the present regulations by profiting from them. They manipulate these expenses in such a way that it makes a profit in its handling of these matters. To the extent that chargebacks to owner-operators reduce the carrier's legitimate expenses, resulting in losses to the owner and a profit to the carrier, they are not legitimate chargebacks or deductions. That is not the ICC's last word on it, as the Landstar court erroneously found. The last word was reiterated in the final rule, where the ICC stated that there was no need to change the insurance regulation. We agree, especially in view of our alteration of the proposed changes to Section 1057.1i, so as to require that owner-operators have access to all documents supporting any chargeback. This will include insurance chargebacks and should deter any excessive markup of insurance as discussed in our notice of proposed rulemaking. That's the final word. I'm sorry if someone finds it useless or cumbersome. That's the law. For that reason, we submit that the district court erred. The judgment should be reversed and remanded for further proceedings. Thank you. Thank both of you for the argument this morning. The case of owner-operator v. Swift is now submitted.
judges: Nelson D. W., Thompson, McKeown